# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRESE BURROUGHS, | § | |
| | § | No. 144, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2011011781 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |
| _____ | § | |
| IN THE MATTER OF THE | § | |
| PETITION OF TYRESE | § | No. 130, 2022 |
| BURROUGHS FOR WRIT | § | |
| OF PROHIBITION | § | |

Submitted: June 28, 2023
Decided: August 30, 2023

Before **SEITZ**, Chief Justice; **VALIHURA, TRAYNOR**, **GRIFFITHS**, Justices and **NEWELL**, Chief Judge,[1] constituting the Court *en banc*.

Upon appeal from the Superior Court. **AFFIRMED.**

ELLIOT M. MARGULES, Esquire, OFFICE OF DEFENSE SERVICES, Wilmington, Delaware, *for Appellant Tyrese Burroughs*.

ANDREW J. VELLA, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware*.

---

[1] Sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rules 2(a) and 4(a) to complete the quorum.

**TRAYNOR**, Justice:

It is reasonable to conclude that a previously convicted drug dealer, who is prohibited by law from possessing firearms but who is again arrested for drug dealing, this time while in possession of a loaded firearm, poses a risk of danger to the community. Even so, the past-proven and currently putative gun-toting drug dealer says that, as a matter of federal and state constitutional law, he should have been released into the community while his new charges were pending free of any financial conditions to his release; money bail, according to the accused, is, to the extent it is designed to protect public safety, prohibited. We disagree.

In arriving at our decision, we recognize that a bail system that allows a dangerous, but affluent, defendant to gain pretrial release while a non-dangerous defendant without bail resources is detained pending trial is a system in need of repair. At present, our bail framework expressly discourages the latter scenario, but recent legislative efforts to foreclose the former have come up short.

In this case, we are presented with neither of the contrasting scenarios described above. Instead, we are asked to decide whether, in light of our state constitutional right to bail, it is permissible to attach unaffordable financial conditions to a dangerous defendant's pretrial release on bail and, if it is, what procedural protections must be observed when such bail is considered. We subject the first question to strict scrutiny and answer in the affirmative. As to the second,

2

we hold that the determination to set cash bail must be supported by clear and convincing evidence that (i) the defendant is a flight risk or poses a substantial risk to the community, victims, witnesses, or other persons, and (ii) nonmonetary conditions of release will not alleviate that risk. When such evidence is adduced, the setting of cash bail—even at an amount that the defendant may not be able to afford—does not offend the "sufficient sureties" clause found in Article I, § 12 of the Delaware Constitution. And because these answers are consistent with, and yield the same result as, the Superior Court's decision on appeal, we affirm.

I

A

In 2019, Tyrese Burroughs was convicted of felony drug dealing. As one consequence of that conviction, Burroughs was, from then on, prohibited from possessing a firearm or ammunition. According to an affidavit of probable cause, on November 25, 2020, the police caught Burroughs engaging in a hand-to-hand drug transaction while in possession of a "Smith and Wesson Walther .380 firearm loaded with seven live rounds."[2] Burroughs initially tried to flee but was quickly apprehended and searched by Wilmington police. The gun was discovered in his waistband along with fifty-eight bags of heroin and small amounts of crack-cocaine and marijuana. Burroughs was arrested and charged with six felonies, one

---

[2] App. to Opening Br. at A27, A43.

3

misdemeanor, and one civil violation: possession of a firearm during the commission of a felony, possession of a firearm by a person prohibited, possession of ammunition by a person prohibited, two counts of drug dealing, carrying a concealed deadly weapon, resisting arrest, and possession of marijuana. Together, these charges carried a minimum-mandatory of eight years and a statutory maximum of 77 years in prison.

B

Following his arrest, Burroughs was brought before a Justice of the Peace Court Magistrate who set cash bail—his firearm charges carried a presumption of cash bail under Delaware's bail statute—at $110,501; the top end of his SENTAC bail-guidelines range.[3] Burroughs did not post bail. Burroughs's preliminary hearing in the Court of Common Pleas (via Zoom) was scheduled for December 14, 2021, but because the arresting officer was on medical leave, the hearing was continued for one week. The Court of Common Pleas did, however, entertain

---

[3] The General Assembly established the Delaware Sentencing Accountability Commission ("SENTAC") in 1984. SENTAC's "overall purpose . . . [is] to establish a system which emphasizes accountability of the offender to the criminal justice system and accountability of the criminal justice system to the public." 11 *Del. C.* § 6580(b). SENTAC comprises four members of the judiciary: the Attorney General or the Attorney General's designee; the Chief Defender of the Chief Defender's designee; the Commissioner of Corrections or the Commissioner of Corrections' designee; and four other members at-large. 11 *Del. C.* § 6580 (a)(1)-(5). The bail guidelines referred to above appear in the SENTAC "Benchbook," which is updated annually and *available at* https://cjc.delaware.gov/sentac. According to the Benchbook, however, "THE BAIL GUIDELINES AND POLICY STATEMENTS [published in the Benchbook] ARE THOSE OF THE JUSTICE OF THE PEACE COURTS AND NOT THE SENTENCING ACCOUNTABILITY COMMISSION. THEY ARE PROVIDED [in the Benchbook] AS A CONVENIENCE FOR USERS." Benchbook at 142. (all capital letters in original).

Burroughs's request that the court lower his bail. He did not request that his bond be released from all financial terms, only that it not be secured by cash only. The State opposed this request, but the court granted it in part, modifying Burroughs's bail to $20,000 to be secured by cash only and $14,501 subject to a secured bond.

A week later, the Court of Common Pleas conducted a preliminary hearing. After the arresting officer described what appeared to him to be a "hand-to-hand drug transaction"[4] between Burroughs and an unidentified female, his approach to Burroughs, Burroughs's flight and eventual apprehension, and the discovery of the loaded firearm and illicit drugs on Burroughs's person, the court found probable cause to believe that Burroughs committed the charged offenses and Burroughs was bound over for further proceedings in the Superior Court. The court, having "heard the actual facts,"[5] acted *sua sponte* to "review and reset bail,"[6] reinstating the original $110,501 cash bail. Burroughs was unable to make bail and was thus detained through the duration of his proceedings.

## C

After his case was transferred to the Superior Court, Burroughs filed a "Motion for Modification of Bail," in which he requested, "[d]ue to his inability to

---

[4] App. to Opening Br. at A57.
[5] *Id.* at A58.
[6] *Id.*

5

post bail, . . . that his bail be converted to an unsecured or lower secured amount."[7] Burroughs's motion invoked, among other things, Article I, § 12 of the Delaware Constitution, which provides that "[a]ll prisoners shall be bailable by sufficient sureties, except for capital offenses . . . ." A Commissioner of the Superior Court held a hearing on Burroughs's motion, during which the State argued his financial conditions of release should be maintained because, in its view, there was strong evidence supporting his conviction and ample facts—given Burroughs's disregard of his person-prohibited status—demonstrating that he posed a serious safety risk to the public. The State also argued that this was Burroughs's "third set of drug dealing charges,"[8] although only one of the prior sets had resulted in conviction. The State observed that the seriousness of Burroughs's criminal behavior appeared to be "escalating" over time and emphasized the presence of a loaded firearm when Burroughs was arrested. All these factors, for the State, weighed in favor of cash bail at the high end of the SENTAC guidelines range. The Commissioner, in apparent agreement with the State, denied Burroughs's motion, announcing that "[t]he bail shall remain as previously set."[9]

---

[7] *Id.* at A63, A68.
[8] *Id.* at A369.
[9] App. to Opening Br. at A1, D.I. 4.

Burroughs was not deterred; the following day he filed a "Motion for Non-Financial Conditions of Release" in which he argued, in what he has since characterized as an as-applied challenge to the amended bail statute,[10] that

> (1) Delaware's Bail practices violate the Equal Protection Clause of the Fourteenth Amendment by disproportionately detaining indigent pretrial defendants[;] . . . (2) [Burroughs's] Fourteenth Amendment Substantive Due Process Rights are violated by those same practices in that, without the constitutionally requisite justification, he has been entirely deprived of his fundamental right of liberty; and (3) Procedural Due Process requirements necessary to prevent erroneous deprivation of liberty are not provided under Delaware rules.[11]

A Superior Court Commissioner rejected these arguments, holding that "the State ha[d] sufficiently demonstrated that [Burroughs] poses a flight risk and a danger to the community if released, and after considering all less restrictive alternatives ([i.e.,] non-monetary conditions of release) . . . that monetary bail is appropriate [given] the State's goals of ensuring [he] appears at his future hearings and safety of the community."[12] The Commissioner thus concluded that Burroughs "h[ad] not established that his right to equal protection was violated, nor that he was

---

[10] *See* Opening Br. at 4 ("Burroughs has not argued the governing statutes are facially unconstitutional.").

[11] App. to Opening Br. at A73. According to the Commissioner's September 7, 2021 Order, when the court denied Burroughs's Motion for Modification of Bail on January 5, 2021, "it was agreed that the constitutional arguments would be preserved for future briefing." Opening Br., Ex. A at 5 n.12 ("Comm'r Order"). We note that neither the transcript of the January 5 hearing nor the Superior Court docket discloses the source of this agreement. Moreover, the "constitutional arguments" raised in the "Motion for Non-Financial Conditions for Release" differ markedly from the constitutional issues flagged in Burroughs's Motion for Modification of Bail.

[12] Comm'r Order at 52–53.

deprived of his right to substantive and procedural due process."[13]   The Commissioner also rejected Burroughs's argument under the "sufficient sureties" clause of the Delaware Constitution.

D

Burroughs filed a "Motion for Review of Commissioner's Order," arguing that the Commissioner erred by failing to test his motion under the strict-scrutiny standard of review on the grounds that he either fell into a suspect class by virtue of his indigency or that his pretrial detention deprived him of his fundamental liberty right under substantive-due-process principles.  If the Commissioner had properly conducted a strict-scrutiny review, Burroughs contended, then the State would have had to prove by clear and convincing evidence that "no other non-monetary conditions of release [could] accomplish" its "compelling interest in preventing crime."[14]  Burroughs questioned the State's ability to meet this burden.

Burroughs also argued that the Commissioner's order undermined his procedural-due-process rights and that his cash bail violated Article I, § 12 of the Delaware Constitution, which provides, by Burroughs's lights, "a right to bail [that] is violated when bail is set at an amount deliberately calculated to incarcerate."[15]

---

[13] *Id.* at 53.
[14] App. to Opening Br. at A332–33.
[15] *Id.* at A327.

The Superior Court Judge reviewing the Commissioner's order rejected each of Burroughs's contentions. Starting with his equal-protection claim, the court noted that "poverty, standing alone, is not a suspect classification" meriting heightened scrutiny.[16] The court thus tested Burroughs's claim under the rational-basis standard of review, determining that "Delaware's bail statute, as applied to [Burroughs], [was valid as] rationally related to ensuring public safety[.]"[17]

Addressing his substantive-due-process claim, the Judge, "[f]or purposes of this case alone, . . . assume[d] [that] the attachment of an unaffordable bail that results in detention implicates a defendant's fundamental right of liberty, triggering a strict scrutiny standard of review of Delaware's bail statute."[18] Relying on the United States Supreme Court's pronouncement in *United States v. Salerno*,[19] the court found the State's "interest in preventing crime by arrestees [] 'both legitimate and compelling.'"[20] The court concluded, moreover, that "the State presented clear and convincing evidence . . . that no less restrictive alternative other than cash bail assigned to [Burroughs] would satisfy the government's compelling interest in protecting the public."[21] Or, to put it another way, "[n]o other means exist[ed] that would be less restrictive to ensure [that Burroughs] d[id] not possess another firearm

---

[16] *State v. Burroughs*, 2022 WL 1115769, at *5 (Del. Super. Ct. Apr. 13, 2022).
[17] *Id.* at *6.
[18] *Id.*
[19] 481 U.S. 739 (1987).
[20] 2022 WL 1115769, at *7 (quoting *Salerno*, 481 U.S. at 749).
[21] *Id.*

9

while in public other than setting a high monetary bail."[22]  In a footnote, the court expanded on this reasoning:

> The Defendant already was prohibited by law from possessing a firearm, but nonetheless was arrested with one allegedly in his possession.  Non-monetary conditions alone therefore were unlikely to deter him from doing so again.  In contrast, the threat of forfeiting a high cash bail was the only tool available to the Commissioner to achieve the State's compelling interest in preventing such conduct.[23]

The court also rejected Burroughs's procedural-due-process claim after finding that he "was represented by competent counsel, his proceedings took place in open court before a neutral decision-maker, and he was provided notice of the charges."[24]  And because Burroughs's bail fell within the SENTAC guidelines and otherwise met the requirements of the bail statute, the court found that it did not violate the requirement of Article I, § 12 of the Delaware Constitution that defendants "shall be bailable upon sufficient sureties."[25]

E

Immediately following the release of the Superior Court's opinion—that is, on the same day—Burroughs requested a writ of prohibition from this Court directing that his "bail be modified to an amount without financial conditions" on the grounds that the Superior Court was "constitutionally prohibited from imposing

---

[22] *Id.*
[23] *Id.* at *7 n.69.
[24] *Id.* at *8.
[25] *Id.*

bail as currently ordered."[26]  One day later, however, Burroughs pleaded guilty to possession of a firearm during the commission of a felony and illegal possession of a controlled substance and was sentenced on that day to three years in prison, effective as of the date of his arrest.  Burroughs promptly filed a direct appeal focused primarily, like his writ of prohibition, on the constitutionality of his unaffordable cash bail.

Neither party alerted this Court to Burroughs's guilty plea and sentence and the effect they might have on the pending appeal and petition for writ of prohibition. We nevertheless requested supplemental briefs addressing whether Burroughs's guilty plea mooted his petition for a writ of prohibition.  After receipt of the supplemental briefs and the parties' briefs in Burroughs's direct appeal, we consolidated Burroughs's appeal and petition for oral argument and decision.

II

As he did in the Superior Court, Burroughs argues on appeal that his pretrial detention—the product of a cash bail he could not afford—violated his rights under the Equal Protection Clause, substantive and procedural due process, and Article I, § 12 of the Delaware Constitution.  "In deciding legal or constitutional questions, we apply a *de novo* standard of review."[27]  But we defer to the trial court's factual

---

[26] Complaint in Proceedings for Extraordinary Writ, In the Matter of the Petition of Tyrese Burroughs for a Writ of Prohibition (Del. Apr. 13, 2022) (No. 130, 2022).
[27] *Wheeler v. State*, 296 A.3d 363, 372  (Del. 2023).

11

determinations "if they are based upon competent evidence and are not clearly erroneous."[28]

## III

## A

Our analysis starts with the threshold issue of mootness. It is undisputed that Burroughs's guilty plea and sentence resulted in incarceration that exceeded, but gave credit for, the span of his pretrial detention. Typically, even though a dispute might have been justiciable when litigation is commenced, the action will be dismissed as moot if that controversy ceases to exist.[29] Here, Burroughs concedes that "[t]he underlying controversies—which stem from the legality of [his] pretrial detention and the corresponding procedures—ceased on April 14, 2022[,] when [he] was convicted via guilty plea."[30]

There are two generally recognized exceptions to the mootness doctrine: "situations that are capable of repetition but evade review or matters of public importance."[31] Burroughs argues that his claims regarding the constitutionality of Delaware's cash-bail system meet both exceptions; his is a situation capable of

---

[28] *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008).

[29] *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 823 (Del. 1997).

[30] Petitioner's Supplemental Submission Regarding Whether Petitioner's Guilty Plea Moots the Petition for Writ of Prohibition, In the Matter of the Petition of Tyrese Burroughs for a Writ of Prohibition (Del. July 7, 2022) (No. 130, 2022).

[31] *Gen. Motors Corp.*, 701 A.2d at 823 n.5.

12

repeating yet evading review and the issues he raises are a matter of public importance.[32]  We agree.

As the Supreme Court remarked in *Gerstein v. Pugh*,[33]

> [p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted.  The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures.  The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'[34]

To state the obvious, the constitutionality of our bail system is of great importance to the administration of criminal justice.  Recent legislative efforts—some successful and others that have failed—attest to this fact.  But the speed with which a typical criminal case moves from arrest to disposition and the unavailability of appellate review of interlocutory orders in criminal cases combine to deprive this Court of the chance to weigh in on this important issue.  Thus, even though the claims Burroughs presents in this appeal are moot as to him, we will yet consider their merits.

---

[32] Although this Court noted in *Radulski for Taylor v. Delaware State Hosp.*, 541 A.2d 562, 566 (Del. 1988) that "[t]he public-interest exception to the mootness doctrine is usually applied to issues which are 'capable of repetition, yet evading review'[,]" the Court has also acknowledged a standalone public interest exception.  *See Gen. Motors Corp.*, 701 A.2d at 823 n.5 (recognizing the "two . . . exceptions to the mootness doctrine [a]s situations that are capable of review or matters of public importance."); *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 633 (Del. 2013) (same); *McDermott Inc. v. Lewis*, 531 A.2d 206, 211 (Del. 1987) (holding that "where the question is of public importance, and its impact on the law is real, this Court has recognized an exception to the [mootness doctrine].").

[33] 420 U.S. 103 (1975).

[34] *Id.* at 110 n.11.

B

Our task is complicated by Burroughs's indecision as to whether he is mounting a facial challenge to Delaware's bail system or a challenge to the system as it was applied to him. To be sure, at oral argument in this Court, Burroughs emphasized that his was an as-applied challenge. But that statement is at odds with the positions he took in the Superior Court and the categorical claims found in his briefs in this Court.

In the Superior Court, for example, Burroughs's equal-protection claim was a broad-based challenge to "money bail based pretrial confinement."[35] His substantive-due-process claim in the Superior Court, for another example, similarly takes aim at money bail as it is applied generally, and not specifically as it affected him.[36] Indeed, the expert he tendered in support of this challenge had nothing to say about Burroughs but, instead, opined as to the inefficacy of secured money bonds and the adverse consequences of pretrial detention for all detainees.[37] Likewise, Burroughs's procedural-due-process claim in the Superior Court did not focus on the process Burroughs was afforded; rather, it was that "Delaware does not provide sufficient procedural safeguards prior to issuing unaffordable bail order[s]."[38]

---

[35] App. to Opening Br. at A74.
[36] *Id.* at A77.
[37] *See id.* at A91.
[38] *Id.*

14

With some minor exceptions, Burroughs's focus on appeal also challenges the use of unaffordable money bail as a general matter and argues that, if it is to be used, the defendant must be afforded certain procedural protections, including a "clear and convincing evidence" standard. Thus, despite Burroughs's attempt to fix our attention exclusively on how the bail statute was applied to him, we see his challenge as more expansive than that. This, and our inclination to address Burroughs's arguments because of their broader ramifications even though they are moot as to him, lead us to frame our analysis in broader terms.[39] With these considerations in mind, we address the following questions:

1. Does the Delaware bail system violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

2. Does the Delaware bail system violate substantive-due-process principles derived from the Fourteenth Amendment?

3. Was Burroughs afforded procedural due process in connection with the setting and review of the conditions of pretrial release?

---

[39] Decisions of this Court support our decision to treat Burroughs's claim as a facial challenge to the amended bail statute despite his insistence that he is levying an as-applied attack. *See Delaware Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 956 (Del. 2020) ("We note preliminarily that, although Dr. Grossinger frames his argument as an as-applied challenge to the vagueness of the Regulations, his challenge is actually a facial one."); *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 287 (Del. 2016) ("As-applied challenges are well-understood, and striking a provision by judicial fiat is something that should result from a facial challenge to the validity of a statute."). *See also John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach.").

4.      Did Burroughs's bail run afoul of Article I, §12 of the Delaware Constitution?

IV

A

Because we read Burroughs's appeal as making a facial challenge to the amended bail statute, we begin our analysis with a general overview of Delaware's bail system, including the genesis of recent revisions to the statute.

To understand this system, one must consult an amalgam of interconnected text in the Delaware Constitution, Chapter 21 of Title 11 of the Delaware Code, the bail guidelines published by SENTAC, and the Special Rule of Criminal Procedure for Pretrial Release promulgated by this Court. This endeavor starts with Article I, § 12 of the Delaware Constitution, which provides that:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great; and when persons are confined on accusation for such offenses their friends and counsel may at proper seasons have access to them.[40]

This provision has been interpreted as conferring on defendants in Delaware a general right to bail,[41] which precludes state judges from ordering preventive

---

[40] A similar provision appears in Delaware's two previous constitutions—the Constitutions of 1792 and 1831. Neither the Declaration of Rights and Fundamental Rules of the Delaware State enacted on September 11, 1776, nor the Constitution of the State of Delaware adopted nine days later contains such a provision.

[41] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) ("Article I, [§] 12 . . . grants a constitutional right to bail in all offenses, including capital offenses upon the stated condition, and does not limit the right in terms of indictment.").

detention without bail for individuals not charged with a capital offense.[42] As a result, courts' only option for incapacitating dangerous non-capital defendants pending trial was through the imposition of unaffordable cash bail,[43] which, used liberally, meant that "dangerous defendants with wealth [were] able to obtain [their] release even if they pose[d] a risk of harm to the public or a specific person" while defendants without access to similar resources were not.[44]

In 2018, in an effort to alleviate this inequity, the General Assembly adopted significant revisions to Chapter 21 aimed at "modernizing the pretrial process" and reducing the "unnecessar[y] det[ention] [of] individuals who lack funds for their release."[45] To that end, the amended bail statute includes a presumption in favor of non-financial conditions of release where "it is reasonably likely that the defendant will appear as is required before or after the conviction of the crime charged and

---

[42] *See State v. Miller*, 2003 WL 231612, at *1 (Del. Super. Ct. Jan. 31, 2003) (finding it "inconceivable that the provisions of section 12 of article 1 of the Delaware Constitution would permit the legislature to mandate pretrial detention without bail" in any non-capital cases).

[43] *See State v. Perkins*, 2004 WL 1172894, at *1–2 (Del. Super. Ct. May 21, 2004) (denying defendant's motion to modify $1,115,000 cash bail and noting the commissioner's "recogni[tion] that . . . Delaware's statutory bail scheme specifically embraces the notion of 'preventive detention,' i.e., pretrial detention for the sake of preventing the accused from posing a danger to the community.").

[44] Del. S.B. 221 syn., 149th Gen. Assem. (2018), *available at* https://legis.delaware.gov/BillDetail?LegislationId=26736.

[45] Del. H.B. 204 syn., 149th Gen. Assem. (2018), *available at* https://legis.delaware.gov/BillDetail?LegislationId=25863.

there is no substantial risk to the safety of the community in permitting such unsecured release."[46]

This presumption is reversed, however, for defendants charged with one of the signal offenses enumerated in § 2107 of the amended statute.[47] Signal offenses include any class A felony, rape, robbery, felony domestic violence offenses, serious weapons offenses and the like. When dealing with a signal offense, courts are presumed to "set conditions of release bond guaranteed by financial terms in an amount within or above the guidelines published by [SENTAC] for that offense and secured by cash only[,]"[48] with the goal of "requir[ing] such bail as reasonably will assure the reappearance of the defendant, compliance with the conditions set forth in the bond, and the safety of the community."[49] To assist in this inquiry, the amended statute instructs the bail-setter to consider

> the nature and circumstances of the crime charged, whether a firearm was used or possessed, the possibility of statutory mandatory imprisonment, whether the crime was committed against a victim with intent to hinder prosecution, the family ties of the defendant, the

---

[46] 11 *Del. C.* § 2105(a). *See also* 11 *Del. C.* § 2101 ("Each court shall utilize a system of pretrial release imposing reasonable nonmonetary conditions of release when those conditions adequately provide a reasonable assurance of the appearance of the defendant at court proceedings, the protection of the community, victims, witnesses and any other person, and to maintain the integrity of the judicial process.").

[47] Although the signal offenses were not incorporated into Chapter 21 until June 30, 2021 (*see* Del. S.S. 1 for S.B. 7, 151st Gen. Assem. (2021), *available at* https://legis.delaware.gov/BillDetail/78868), they were applicable to Burroughs through the Interim Special Rule of Criminal Procedure for Pretrial Release promulgated by this Court to guide the implementation of the amended bail statute (later replaced by the Special Rule of Criminal Procedure cited in this opinion).

[48] 11 *Del. C.* § 2107(c).

[49] 11 *Del. C.* § 2107(a).

defendant's employment, financial resources, character and mental condition, the length of residence in the community, record of convictions, habitual offender eligibility, custody status at time of offense, history of amenability to lesser sanctions, history of breach of release, record of appearances at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.[50]

To further reduce unnecessary pretrial detentions, even in the face of a signal offense, the amended statute requires courts to conduct a review of bail conditions for any defendant "who remains detained after 72 hours from [his] initial presentment because he is unable to meet conditions of pretrial release," with such review occurring "within 10 days from the date of detention."[51]  Moreover, under the Special Rule of Criminal Procedure for Pretrial Release, which guides the implementation of Chapter 21, judges are required to consider a defendant's financial circumstances when imposing cash bail[52] and set forth findings on the record as to why "a condition[] of release bond guaranteed by financial terms is or is not necessary . . . ."[53]

But the 2018 amendments to the bail statute did not eliminate the problem identified in the synopsis of one of the operative bills—that wealthy but dangerous defendants could still gain pretrial release, while similarly dangerous defendants

---

[50] 11 *Del. C.* § 2105(b).
[51] 11 *Del. C.* § 2110(a).
[52] Super. Ct. R. Crim. P. 5.2(m).
[53] Super. Ct. R. Crim. P. 5.2(k).

without bail resources could not. This prompted an initiative to amend the Delaware Constitution.

In the summer of 2019, an Act was introduced in the General Assembly, proposing that Article I, § 12 be amended to allow the preventive detention without bail of persons accused of certain felonies when "[t]he proof is positive and the presumption great" that the accused had committed the felony. The proposed amendment provided, moreover, that, to support preventive detention without bail, the proof must be "clear and convincing that no condition or combination of conditions other than detention will reasonably assure the person's appearance in court when required, or protect the safety of any other persons or the community, or prevent the person from obstructing or attempting to obstruct justice."[54]

Both Houses of the 151st General Assembly approved the proposed amendment to Article I, § 12 in 2022. But amending the Delaware Constitution is a "'two-legged' process requiring the approval of two-thirds of the members of both Houses by two successive General Assemblies[.]"[55] And because the 152nd General

---

[54] Del. S.B. 151., 150th Gen. Assem. (2019), *available at* https://legis.delaware.gov/BillDetail?LegislationId=47897. According to the General Assembly's website, this version of the amendment was "[i]ntroduced on 7/31/19" and "[a]wait[ed] consideration in Committee. An identical bill—Senate Bill No. 11—was introduced in the 151st General Assembly in April 2021, passed by the Senate in May 2022, and passed by the House of Representatives in June 2022. S.B. 11, 151st Gen. Assem., *available at* https://legis.delaware.gov/BillDetail?LegislationId=68641.
[55] *Albence v. Higgin*, 295 A.3d 1065, 1077 & n.66 (Del. 2022) (citing Del. Const. art. XVI, § 1 and noting that there are actually two procedures for amending our constitution. It has been observed that the second procedure which authorizes the submission of proposals to revise the

20

Assembly, which commenced in 2023 with a second regular session to occur in 2024,[56] has not yet acted on the second leg of the amendment, Article I, § 12 and its bail requirement for non-capital offenses stands.

B

Against this backdrop, we proceed to Burroughs's arguments regarding the unconstitutionality of Delaware's bail system, starting with his claim that the statute's embrace of unaffordable cash bail violates the Equal Protection Clause of the Fourteenth Amendment by unjustly discriminating against defendants with insufficient bail resources.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[57]  In practice this language guarantees "a right to be free from invidious discrimination in statutory classifications and other governmental activity."[58]  When asked to decide whether a government action deprives a class of citizens of the rights afforded to them by the Constitution, a court must first determine whether the

---

constitution to a constitutional convention, "has fallen out of practice . . . [and] is probably unconstitutional under the United States Constitution.").  *See* Randy J. Holland, *The Delaware State Constitution* 286 (2d ed. 2017).

[56] *See* 29 *Del. C.* § 701.

[57] U.S. Const. amend. XIV, § 1.

[58] *Harris v. McRae*, 448 U.S. 297, 322 (1980).

challenged act discriminates against a suspect class.[59]  If so, then strict scrutiny is applied to test the act's validity.[60]  If not, then rational-basis review applies.[61]

The rational-basis standard is highly deferential—it clothes a statute in a "strong presumption of validity," requiring plaintiffs to prove the absence of "a rational relationship between the disparity of treatment and some legitimate governmental purpose."[62]  Put differently, statutory "classification[s] [reviewed under the rational basis test] must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[63]  Strict scrutiny, on the other hand, requires the state to demonstrate a compelling, rather than merely legitimate, governmental purpose.[64] Strict scrutiny requires a "daunting two-step examination," which the governmental action will survive only where the state demonstrates that the classification is used to "further compelling governmental interests," and "narrowly tailored—meaning necessary—to achieve that interest."[65]

---

[59] *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973) ("We must decide, first, whether the Texas system of financing public education operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny.").

[60] *Id.*

[61] *Id.*

[62] *Heller v. Doe*, 509 U.S. 312, 319–20 (1993).

[63] *Id.* at 320.

[64] *Id.*

[65] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2162 (2023) (citing *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 311–12 (2013)); *see also Doe v. Wilmington Hous. Auth.*, 88 A.3d 654, 666 (Del. 2014).

The list of inherently suspect classifications includes race, color, religion, and ancestry.[66] "Poverty, standing alone[,] is not a suspect classification."[67] Burroughs concedes this point but maintains that his claim requires heightened scrutiny because of the general rule that "a state cannot condition a person's liberty on a monetary payment she cannot afford unless no alternative measure can meet the state's needs."[68] In invoking this rule, Burroughs relies on the United States Supreme Court's decisions in *Griffin v. Illinois*[69] and *Bearden v. Georgia*.[70]

But both *Bearden* and *Griffin* dealt with post-conviction issues, not pretrial detention. In *Griffin*, the Supreme Court held that indigent defendants were deprived of their right under state law to adequate appellate review when they were denied access to trial transcripts that non-indigent defendants were able to purchase.[71] The denial of appellate review based on indigency potentially deprived defendants of the "correct adjudication of guilt or innocence."[72] In *Bearden*, after the defendant pleaded guilty to burglary and theft, the state considered "the goals of punishment

---

[66] *Turnbull v. Fink*, 668 A.2d 1370, 1379–80 (Del. 1995).
[67] *Harris*, 448 U.S. at 323.
[68] Opening Br. at 24.
[69] 351 U.S. 12 (1956).
[70] 461 U.S. 660 (1983).
[71] *See Griffin*, 351 U.S. at 16–18 ("Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial. . . . There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance.").
[72] *Id.* at 18–19.

and deterrence" and sentenced him under Georgia's First Offender's Act to four years' probation on the condition that he pay a $500 fine and $250 in restitution.[73] Bearden paid $200 but was unable to pay the $550 outstanding balance and his probation was revoked.[74] This revocation "turned a fine into a prison sentence,"[75] based on no other apparent basis than Bearden's indigency.[76]

Here we deal with the regulatory matter of pretrial detention, not the adjudication of guilt or post-conviction sentencing.[77] Bail is used to detain a defendant under limited circumstances, not in order to punish, but to "adequately provide a reasonable assurance of the appearance of the defendant at court proceedings, the protection of the community, victims, witnesses and any other person, and to maintain the integrity of the judicial process."[78]

Neither *Bearden* nor *Griffin* held that indigency is a suspect classification or applied strict scrutiny to reach their respective holdings.[79] We thus see no reason to

---

[73] *Bearden*, 461 U.S. at 662, 671–72.

[74] *Id.* at 663.

[75] *Id.* at 674.

[76] *See id.* at 672 ("If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.").

[77] *See Salerno*, 481 U.S. at 746 (discussing that pretrial detention under the Bail Reform Act is "regulatory, not penal[.]").

[78] 11 *Del. C.* § 2101.

[79] For *Griffin*, *see supra* note 71. For *Bearden*, *see Bearden*, 461 U.S. at 666–67 ("Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection

24

depart from the widely accepted principle that "financial need alone [does not] identif[y] a suspect class for purposes of equal protection analysis."[80]

Accordingly, because Burroughs cannot demonstrate that Delaware's bail statute targets a suspect class, his claim is assessed under the deferential rational-basis standard of review. And it is clear to us that the statute meets this standard: by imposing a cash-based barrier to the pretrial release of dangerous defendants and those at risk of fleeing the state, Delaware's bail scheme is rationally related to the government's legitimate—and compelling[81]—interest in ensuring public safety and reappearance at judicial proceedings.

## C

But the analysis thus far only forecloses one route to strict scrutiny. A second route—not yet travelled—is through substantive due process.

The Due Process Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[n]o person shall . . . be

---

between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . .'") (quoting *Williams v. Illinois*, 399 U.S. 235, 260 (Harlan, J., concurring)).

[80] *Maher v. Roe*, 432 U.S. 464, 471 (1977).

[81] *See Salerno*, 481 U.S. at 739, 749–50 ("[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal" and the "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling."). *Salerno* further explains that the government's already legitimate and compelling interest "is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest."

deprived of life, liberty, or property, without due process of law."[82] Substantive due process prevents the government from "engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"[83] Consequently, if a state regulation affects a fundamental right—such as life, liberty, or property—courts will subject that statute to exacting strict-scrutiny review.[84]

Burroughs argues that pretrial liberty is a fundamental right whose deprivation triggers substantive-due-process protections and strict-scrutiny testing. To pass this test, Burroughs contends, the State must show "clear and convincing evidence that money bail is necessary and the least restrictive means of addressing a compelling interest."[85] Two assumptions are implicit in Burroughs's conception of the strict-scrutiny standard as he applies it to the facts of his case: (1) that pretrial detention via unaffordable bail infringes on a fundamental right; and (2) that Delaware's bail statute must apply the evidentiary standard of clear and convincing evidence to pass constitutional muster. In our view, Burroughs's argument on this point conflates the constitutionality of our bail system and, to the extent that the system passes constitutional muster, the procedural protections that are required to ensure that the

---

[82] *Id.* at 746. *See Dorsey v. State*, 761 A.2d 807, 815 (Del. 2000) (discussing the incorporation doctrine by which "the United States Supreme Court began to hold that selected provisions of the federal Bill of Rights also afforded protection against state action by virtue of the Due Process Clause of the Fourteenth Amendment.").

[83] *Salerno*, 481 U.S. at 746 (citing *Rochin v. California,* 342 U.S. 165, 172 (1952) and *Palko v. Connecticut,* 302 U.S. 319, 325–26 (1937)).

[84] *See supra* note 82.

[85] Opening Br. at 8 n.6.

system is fairly administered. We disentangle these issues, addressing first Burroughs's substantive-due-process challenge to the bail system and then his procedural-due-process concerns as they relate to him individually.

i

The Supreme Court, in *United States v. Salerno*, upheld the constitutionality of a federal statute permitting the pretrial detention of a defendant upon the government's showing "by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'"[86] In reaching its decision, the court recognized the "fundamental nature" of an "individual's strong interest in liberty[,]"[87] weighed it against the government's "legitimate and compelling" interest in "preventing crimes by arrestees[,]"[88] and concluded that, in situations where "an arrestee presents an identified and articulable threat to an[other] [] or the community,"[89] the individual's liberty interest could be "subordinated to the greater needs of society."[90]

Although jurisdictions are admittedly split as to whether *Salerno* considered pretrial detention as infringing on a fundamental right,[91] we believe that where, as

---

[86] *Salerno*, 481 U.S. at 741.
[87] *Id.* at 750.
[88] *Id.* at 749.
[89] *Id.* at 751.
[90] *Id.* at 750–51.
[91] *See* Comm'r Order at 23–29 (discussing the jurisdictional split between courts interpreting *Salerno*).

27

here, a trial court has the discretion to issue monetary conditions of release secured by cash in an amount above a defendant's ability to pay after considering his financial circumstances, such bail operates as a *de facto* detention implicating the defendant's fundamental liberty right. The point was expressed well by the Supreme Judicial Court of Massachusetts in *Brangan v. Commonwealth*. The *Brangan* court concluded that "where a judge sets bail in an amount so far beyond a defendant's ability to pay that it is likely to result in long-term pretrial detention, it is the functional equivalent of an order for pretrial detention, and the judge's decision must be evaluated in light of the same due process requirements applicable to such a deprivation of liberty."[92]

We thus agree with Burroughs's position that principles of substantive due process require Delaware's bail statute to satisfy strict-scrutiny review. And we believe that the statute, by being narrowly tailored to advancing the State's compelling interests in protecting community safety and reducing risk of flight,[93] meets this exacting standard. Our revised system of bail requires judges to make individualized assessments regarding a defendant's right to financial or non-financial conditions of release; mandates that the application of cash bail be supported, in writing, by articulable facts; and commands the judge to consider the

---

[92] *Brangan v. Commonwealth*, 80 N.E.3d 949, 965 (Mass. 2017).
[93] *See Salerno,* 481 U.S. at 754–55 (identifying both risk of flight and community safety as compelling interests).

28

defendant's risk profile and individual financial circumstances. Any defendant detained pretrial is, moreover, entitled to a prompt review of his conditions of bail. These requirements, along with the "clear and convincing evidence" standard we discuss next ensure that cash bail is employed in a manner that is narrowly tailored to advancing the State's compelling interests.

ii

But just because the bail statute satisfies substantive-due-process concerns does not mean that it passes muster under procedural-due-process principles, which provide that "even when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."[94] For Delaware's amended bail statute to be fair, Burroughs contends, the State must, when seeking the imposition of unaffordable cash bail, present clear and convincing evidence of a defendant's dangerousness or risk of flight. The protections built into the statute are not, in other words, sufficient on their own to meet demands of procedural due process without the adoption of the "clear and convincing evidence" standard. We agree.

The United States Supreme Court's decision in *Addington v. Texas*[95] supports this view. There, the court considered the standard of proof required by the

---

[94] *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).
[95] 441 U.S. 418 (1979).

Fourteenth Amendment "to commit an individual involuntarily for an indefinite period to a state mental hospital[,]"[96] concluding that because "civil commitment for any purpose constitute[d] a significant deprivation of liberty[,]"[97] "due process require[d] the state to justify confinement by proof more substantial than a mere preponderance of the evidence."[98] The court also recognized, however, that requiring the stringent criminal standard of "beyond a reasonable doubt" for civil commitments could undermine the state's legitimate interest in "protect[ing] the community from the dangerous tendencies of some who are mentally ill."[99]

So, "[h]aving concluded that the preponderance standard f[ell] short of meeting the demands of due process and that the reasonable-doubt standard [wa]s not required," the court looked for "a middle level of burden of proof[,]"[100] ultimately finding that, though the exact formulation was a matter of state law, a "burden equal to or greater than the 'clear and convincing' standard . . . [wa]s required to meet due process guarantees."[101] In like manner, the setting of cash bail, which risks defendants' pretrial liberty, should be supported by clear and convincing evidence.[102] In adopting this standard, we recognize the practical difficulty the State

---

[96] *Id.* at 419–20.
[97] *Id.* at 425.
[98] *Id.* at 427.
[99] *Id.* at 426, 430.
[100] *Id.* at 431.
[101] *Id.* at 433.
[102] This standard of proof should not be confused with the rules governing the admissibility of evidence at bail hearings. Just as the Federal Rules of Evidence do not apply at detention hearings,

and the Justice of the Peace Court will encounter when bail is set immediately following arrest at a defendant's initial presentment before a committing magistrate. In light of the exigencies surrounding that appearance, it would be unreasonable, in our view, to require the State to present clear and convincing evidence at that stage. We therefore hold that this evidentiary standard will be triggered at the review required under 11 *Del. C.* § 2110(a).[103]  Before that, whether the conditions of a release bond are to be guaranteed by financial terms, including cash-only security, "shall be in the discretion of the court subject to . . . chapter [21 of Title 11 of the Delaware Code]"[104] and the Special Rules of Criminal Procedure for Pretrial Release.

In this case, the State met its burden.  Burroughs is a person prohibited from possessing a firearm who was caught in public selling drugs while in possession of a loaded gun.  And, in addition to disregarding a government order, his charge was yet another in a series of escalating criminal acts.  In short, we find no fault in the

---

*see* 18 U.S.C. § 3142(f)(2)(B), the Delaware Rules of Evidence do not apply to . . . [m]iscellaneous proceedings such as . . . [a] [d]etention hearing in criminal hearings.  D.R.E. 1101 (b)(4); *see also* Wayne R. LaFave et al., Criminal Procedure (5th ed. 2009) § 12.1(d) ("Information received at a bail hearing need not conform to the rules pertaining to the admissibility of evidence at trial. However, this should not be taken to mean that information must be accepted by the court without regard to its reliability.  Thus, whether hearsay is admissible in a bail hearing must ultimately be determined on a case by case basis by asking whether in the particular circumstances it is the kind of evidence on which responsible persons are accustomed to rely in serious affairs.")

[103] *See supra* p. 19.

[104] 11 *Del. C.* § 2104(e)(1).

Superior Court's finding that the evidence was clear and convincing and that Burroughs represented an articulable threat to public safety.

We disagree, however, with the Superior Court's finding that Burroughs's bail was justifiable on the ground that "the threat of forfeiting a high cash bail was the only tool available to the Commissioner to achieve the State's compelling [safety] interest[.]"[105]   Section 2113 of the amended bail statute provides that, "[n]otwithstanding any law to the contrary, no property, cash, surety or other assets shall be forfeited except upon failure of the accused to appear as required by any court."[106]  Because an individual does not risk forfeiture of his cash bail upon the commission of a crime while awaiting trial, the imposition of financial conditions of release cannot be supported on that ground.  Put differently, cash bail set to ensure law-abiding conduct while on pretrial release is not narrowly tailored to the State's public-safety interest because that cash is not risked by subsequent criminal acts; absent the risk of forfeiture, monetary conditions of release provide no deterrent to a defendant's unlawful conduct while awaiting trial.

## D

Up to this point, we have hewed to Burroughs's concession at oral argument that the use of money bail to preventively detain individuals is permissible under the

---

[105] *See supra* note 23.
[106] 11 *Del. C.* § 2113(b).

federal constitution so long as its imposition is supported by clear and convincing evidence.[107] But Burroughs also argues that Article I, § 12 of the Delaware Constitution prohibits the use of unaffordable money bail to address public-safety concerns. Even though the use of high cash bail is valid under the federal constitution, it is, according to Burroughs, invalid under our state constitution, at least when used to advance the government's safety interest rather than to reduce a defendant's flight risk.[108]

As mentioned earlier, Article I, § 12 provides that, except for capital offenses, "[a]ll prisoners shall be bailable by sufficient sureties . . . ."[109] Burroughs interprets this language to mean that "bail is an unconditional right in . . . [non-capital] cases."[110] Defendants cannot, in other words, be intentionally detained pending trial unless they have been charged with a capital offense. It follows, the argument goes, that using high cash bail to increase the likelihood of pretrial detention for non-capital crimes is an invalid workaround of this section.

We agree with Burroughs that Article 1, § 12 extends to defendants the right to pretrial release via bail when not charged with a capital offense. The amended

---

[107] Oral Argument at 4:57–6:29, *Burroughs v. State IMO a Writ of Prohibition*, Nos. 144, 2022 and 130, 2022 (Del. argued June 28, 2023) https://livestream.com/accounts/5969852/events/10842489/videos/236685661/player.

[108] Burroughs distinguishes bail that serves the government's public-safety interest from bail that deters a defendant from fleeing the state, noting that, under 11 *Del. C.* § 2113(b), defendants who fail to appear at court risk forfeiting their bail money. *See supra* note 107 at 6:29–7:45.

[109] *See supra* note 40.

[110] Opening Br. at 33–34 (quoting *Steigler*, 250 A.2d at 383).

bail statute codifies this concept through §§ 2102(2) (defining "bail" as "the pretrial release of a defendant from custody upon the terms and conditions specified by an order of the court") and 2104(a) (providing that "[a]ny person who is arrested and charged with any crime other than a capital crime shall be released upon execution of" a court-ordered conditions of release bond).[111]  We are not persuaded, however, that this right is violated—as Burroughs claims that it is—when a defendant is detained awaiting trial because he could not afford to post his bail.

To put a finer point on it, the Delaware Constitution, when stating that all prisoners are bailable by sufficient sureties, guarantees every non-capital defendant the right to receive some amount of bail considered sufficient by the court to permit his pretrial release.  It does not follow that that amount must be adjusted downward until proportionate with the defendant's ability to pay; if it did, all criminal defendants not charged with a capital offense would be guaranteed their freedom before trial regardless of the danger they pose to society or the severity of their alleged offenses.

It bears emphasis here that Burroughs's argument on this point is not that cash cannot be used to achieve the purposes of bail but only that, should cash or other financial conditions be attached to a defendant's bail, the amount of cash must not

---

[111] 11 *Del. C.* §§ 2102(2), 2104(a).

be unaffordable.[112]  Burroughs does not, however, explain how he teases the notion of affordability from Article I, § 12's text.  His argument, moreover, fails to account for Article I, § 12's designation of the type of "sureties" that will secure a defendant's pretrial release:  "*sufficient* sureties."  "Sufficient," as we see it in this context, "was meant to be a qualification that provide[s] a measure of discretion for judges to set the type and level of bail necessary to fulfill the purpose of bail . . . ."[113]  And, to reiterate, the purpose of bail in Delaware is to "adequately provide a reasonable assurance of the appearance of the defendant at court proceedings, the protection of the community, victims, witnesses and any other person, and to maintain the integrity of the judicial process."[114]  A construction that mandates the release of a dangerous defendant runs contrary to that purpose.[115]

---

[112] We note that several other states have considered whether cash bail is permissible under "sufficient sureties" clauses similar to ours.  There appears to be a split of authority on this question.  *Compare Trujillo v. State*, 483 S.W.3d 801, 806 (Ark. 2016) ("[B]ased on the plain language of the constitution and our stated purpose for bail, we hold that the term 'sufficient sureties' refers to a broad range of methods to accomplish 'sufficient sureties,' including cash."); *Saunders v. Hornecker*, 344 P.3d 771, 778–82 (Wyo. 2015) (surveying the split of authority regarding the definition of "sufficient sureties" and concluding that cash-only bail is a permissible method to accomplish the primary purpose of bail consistent with Wyoming's "sufficient sureties" clause) *with State v. Barton*, 331 P.3d 50, 59 (Wash. 2014) (holding that, under Washington "sufficient sureties" clause, "'surety' contemplates a third-party arrangement as, distinguished from the accused depositing cash or property directly with the court.").

[113] *State v. Jackson*, 384 S.W.3d 208, 213 (Mo. 2012).

[114] 11 *Del. C.* § 2101.

[115] *See In re Kowalczyk*, 301 Cal. Rptr. 3d 648, 662 (Cal. Ct. App. 2022) (taking up a claim regarding the constitutionality of unaffordable cash bail, the California Court of Appeals analyzed the phrase "sufficient sureties" and found that "[a]lthough we have found no California case expressly interpreting the phrase 'sufficient sureties,' the phrase must be construed in conjunction with section 12's requirement that trial courts fix the amount of bail upon consideration of 'the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.'  When viewed as a whole,

By contrast, our reading comports with how our trial courts have applied the amended bail statute. Courts impose conditions of release on defendants awaiting trial. These conditions are typically non-financial unless the defendant has committed a signal offense. To avoid the arbitrary imposition of cash bail for signal offenses, courts look to the factors enumerated in 11 *Del. C.* §2105(b) and the SENTAC guidelines to inform their consideration of what amount defendants must pay to secure their release. In Burroughs's case, the guidelines authorized a cash bail of $110,501. He would have been released following payment of that amount. Simply put, there is no textual warrant in Article I, § 12 for the notion that he must be released anyway because of his inability to make such a payment. We therefore agree with the Superior Court's denial of Burroughs's state constitutional claim.

V

To sum up, we hold that our State's bail system as reflected in Chapter 21 of Title 11 of the Delaware Code and related rules does not violate the Equal Protection Clause of the Fourteenth Amendment. Nor does it violate that amendment's Due Process Clause so long as bail-setting courts, when imposing financial conditions that will result in a defendant's pretrial detention, observe the procedural protections

---

and with reference to section 28(f)(3)'s additional considerations of public and victim safety, the most natural reading of section 12 is that a person has a right to be released upon the posting of a sufficient security which a court, in its discretion, determines is adequate to accomplish the purposes of bail, i.e., to protect public and victim safety and to ensure a defendant's presence in court.").

36

set forth in the bail statute and apply a "clear and convincing evidence" standard as described above. And finally, we conclude that the "sufficient sureties" clause found in Article I, § 12 of the Delaware Constitution does not require that the financial conditions attached to release bonds be affordable.

We recognize that, absent an amendment to Article I, § 12, the setting of cash bail for persons accused of signal offenses will result in the pretrial detention of many defendants, but only where clear and convincing evidence establishes that the purposes of bail can be served in no other way. We also understand that some defendants no less dangerous than those detained will be able to secure pretrial release because of their superior bail resources. This flaw, as we have endeavored to explain, is not constitutional in magnitude; whether it is tolerable is for the democratic process to decide.

We affirm the Superior Court's judgment.